UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DRUT TECHNOLOGIES, INC.,<br><br>      Plaintiff,<br><br> v.<br><br>MICROSOFT CORPORATION,<br><br>      Defendants. | No. 2:21-cv-01653-BJR<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT MICROSOFT'S MOTION TO DISMISS |

## I. INTRODUCTION

Before the Court is Defendant Microsoft Corporation's ("Microsoft") motion to partially dismiss Plaintiff's Complaint ("Motion" or "Mot.," Dkt. 16) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff Drut Technologies, Inc. ("Drut") opposes the Motion. Having reviewed the pleadings, the record of the case, and the relevant legal authorities, the Court GRANTS the Motion in part, and DENIES it in part. The Court's reasoning is set forth below.

## II. FACTUAL BACKGROUND[1]

This dispute arises from a supplier agreement between Microsoft and Drut, a company that had, prior to the events at issue in this case, developed certain technology for use in cloud-based servers.[2] Compl. ¶¶ 3-5. On November 20, 2019, Drut and Microsoft entered into a Master

---

[1] The facts recited below are taken from Plaintiff's Complaint ("Compl.," Dkt 1). For the purposes of the present motion, the Court takes the factual allegations in the Complaint as true.

[2] Drut designed a set of computer algorithms, and a configuration of software and hardware components, that allows cloud-based resources to be disaggregated so to improve servers' efficiency. Compl. ¶¶ 3-5.

ORDER - 1

Supplier Services Agreement ("MSSA"), pursuant to which Microsoft engaged Drut in a project in which Drut was to refine its developed technology and apply it to Microsoft's Azure server network (the "Project"). *Id.* ¶¶ 15, 47; Declaration of Brian Tuttle ("Tuttle Decl.," Dkt. 1), Ex. B (MSSA). Under the MSSA, Drut was to provide Microsoft several deliverables that were defined in a separate Statement of Work ("SOW"). Tuttle Decl., Ex C (SOW). The SOW divides the deliverables into five separate "milestones" and, for each milestone, provides for a specific delivery date and payment amount. Compl. ¶¶ 62-63; SOW at 2-7.

Section 3 of the MSSA provides that "[e]ach party will own and retain all rights to its pre-existing IP and any IP developed independently of Services performed under this Agreement." Compl. ¶ 58; MSSA at 6 § 3(a). Section 3 also contains a provision granting Microsoft a license to materials incorporated into Drut's deliverables. It provides:

> If Supplier Materials are incorporated into Deliverables or are necessary for the use or distribution of Deliverables by Microsoft or any third-party, then Supplier will continue to own the Supplier Materials, including any Supplier IP therein ("Retained IP"). Unless the parties agree on written license terms, Supplier grants Microsoft and its Affiliates a ***worldwide, nonexclusive, perpetual, irrevocable, royalty-free, fully paid-up right and license***, under all current and future Retained IP, to
>
> a. make, use, reproduce, format, modify, and create derivative works of the applicable Supplier Materials,
>
> b. publicly perform or display, import, broadcast, transmit, distribute, license, offer to sell and sell, rent, lease, or lend copies of the applicable Supplier Materials and derivative works thereof,
>
> c. combine the Supplier Materials and derivative works thereof with any software, firmware, hardware, or services, …

MSSA at 7-8 § 3(c)(2) (emphasis added).

Finally, Microsoft and Drut had entered into a Non-Disclosure Agreement (the "NDA") in April 2019, prior to executing the MSSA. Compl. ¶ 98; Tuttle Decl., Ex. A (NDA). That agreement is incorporated into the MSSA, which provides that "[i]nformation shared under the

ORDER - 2

[MSSA] is Confidential Information and subject to the NDA." MSSA at 10 § 6(a)(1). The MSSA further requires the parties to "hold in strictest confidence and not use or disclose to any third-party any Confidential Information of the other party." Compl. ¶¶ 61, 110; MSSA at 10 § 6.

Drut alleges that, from February to April 2020, following its completion of Milestone 1, Microsoft imposed additional and costly requirements for the deliverables that delayed and hindered Drut's completion of the milestones. Compl. ¶¶ 70-88. Despite Drut's completion of Milestone 2 in late April 2020, Microsoft, which had by then adopted a "hostile" and "noncooperative" approach to the Project, refused to pay for those deliverables unless the parties amended the SOW. *Id*. ¶¶ 68-69, 94-96. The parties did so by executing a Change Order on April 24, 2020 that modified the work required for Milestones 2 through 5, and also required Drut to provide Microsoft with access to its source code and other proprietary technology. *Id*. ¶¶ 97-98, 100; Tuttle Decl., Ex. 4 (Change Order).[3] To that end, Drut sent Microsoft a physical device that demonstrated Drut's developed software and hardware configuration. Compl. ¶ 115.

According to Drut, it eventually completed the remaining milestones by June 2020. Compl. ¶ 103. Microsoft, however, despite having previously represented that it would make payment for them, notified Drut on July 17, 2020 that it would not do so because Drut had missed milestone deadlines and failed to provide completed deliverables. *Id*. ¶¶ 104-05.

Drut alleges that Microsoft, having received Drut's proprietary information pursuant to the Change Order (Compl. ¶¶ 112-15), began to develop its own server using Drut's technology. *Id.* ¶ 117. In September 2020, Microsoft posted a video onto YouTube that showed Microsoft's Chief

---

[3] Copies of the MSSA, the NDA, the SOW, and the Change Order were submitted by Microsoft with its Motion. Given the extent to which the Complaint and the claims asserted therein rely on those documents, and in the absence of any dispute as to their authenticity, the Court deems them incorporated by reference into the Complaint. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

ORDER - 3

Technology Officer for Azure presenting, as an "Azure Server," a server architecture that used the "exact configuration" as the device that Drut had earlier provided to Microsoft. *Id.* ¶¶ 120-136.

Plaintiff commenced this lawsuit on December 10, 2021, asserting the following claims against Microsoft: (1) claims for declaratory relief; (2) trade secret misappropriation in violation of federal and Washington state law; (3) breach of contract; (4) breach of the implied covenant of good faith and fair dealing; (5) conversion; (6) unjust enrichment; (7) quantum meruit; and (8) violation of Washington's Consumer Protection Act. Microsoft filed the Motion on February 1, 2022, Drut filed an opposition brief on March 7, 2022 ("Opposition" or "Opp.," Dkt. 26), and Microsoft filed a reply brief on March 21, 2022 ("Reply" or "Rep.," Dkt. 27).

### III.   DISCUSSION

In the Motion, which this Court construes as a partial motion to dismiss, Microsoft seeks dismissal of the majority of Drut's claims against it. As noted in further detail below, Microsoft does not seek dismissal of one of Drut's declaratory judgment claims, Drut's entire quantum meruit claim, or Drut's claims for unjust enrichment, breach of contract, and breach of the implied covenant of good faith and fair dealing that are premised on Microsoft's alleged failure to pay for completed deliverables. *See generally* Mot. As for the claims that Microsoft does move to dismiss, the Court reviews them in turn.

**A.    Legal Standard**

A motion to dismiss for failure to state a claim under Rule 12(b)(6) is properly granted if the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

ORDER - 4

"A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016). When considering a motion to dismiss under Rule 12(b)(6), courts must accept the factual allegations in the complaint as true and construe such allegations in the light most favorable to the plaintiff. *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886-87 (9th Cir. 2018).

### B. Drut's Claim for Declaratory Relief

Drut seeks a declaration from this Court that "Microsoft's failure to pay Drut for Milestones 3 through 5 negates any right to the license contemplated in Section 3(c)(2) of the MSSA." Compl. ¶ 147. In its Motion, Microsoft contends that Drut is not entitled to this declaration because the license granted by the MSSA is "irrevocable [and] cannot be invalidated." Mot at 5-9.[4] Microsoft is correct.

#### 1. Whether the Parties Agreed to a License

The parties dispute whether the MSSA contains a license agreement in the first instance. As noted above, Section 3 of the MSSA provides that, "[u]nless the parties agree on written license terms," Drut grants to Microsoft a license to use and disclose the technology provided within the scope of the Project. MSSA at 7-8 § 3(c)(2). In support of its argument that the MSSA never granted a license to Microsoft, Drut points to the qualifying phrase, "[u]nless the parties agree on written license terms" (MSSA § 3(a)), and a provision in Section 12 stating that the MSSA "does not replace any separate written license agreement between Microsoft and [Drut]" (MSSA at 19 §

---

[4] Drut also seeks a declaration that "the obligations set forth in the [Change Order] do not bind Drut because the [Change Order] was not supported by valid consideration or was the product of undue influence, coercion, or other improper means." Compl. ¶ 147. As Microsoft never specifically addresses that claim, the Court does not construe the Motion as seeking its dismissal.

ORDER - 5

12(h)).  According to Drut, these provisions "reflect[] that the parties contemplated entering into a separate license agreement."  Opp. at 4.

At best, these provisions permit the parties to enter into a separate licensing agreement that, if executed, would supersede the license agreement in Section 3.  They do not, as Drut contends, demonstrate that the parties were *required* to enter into a separate agreement or that the license agreement already contained in the MSSA was somehow no longer in effect.  As the Complaint does not allege that the parties agreed in writing to any other license terms, Drut fails to show that the license agreement contained in Section 3 was, by the MSSA's own terms, replaced or rendered inoperative.

Drut also contends that the MSSA is ambiguous as to whether it granted a license, and extrinsic evidence would confirm that no license was intended.  Opp. at 4.  Drut points specifically to allegations in the Complaint that the parties' representatives discussed and evinced an understanding "that a subsequent, royalty-bearing license was needed and would be negotiated."  *Id*. at 4-5 (quoting Compl. ¶ 59).  Drut is correct that Washington law "permits the court to examine extrinsic evidence to determine whether a contract is ambiguous" (*id*. at 4 (citing, *inter alia*, *Berg v. Hudesman*, 115 Wash. 2d 657 (Wn. Sup. Ct. 1990))), however such evidence "is not admissible for the purpose of adding to, modifying, or contradicting the terms of a written contract, in the absence of fraud, accident, or mistake."  *Berg*, 115 Wash. 2d at 669 (citation omitted); *see Wilkinson v. Chiwawa Communities Ass'n*, 180 Wash. 2d 241, 251 (Wn. Sup. Ct. 2014) ("We [] do not consider extrinsic [e]vidence that would vary, contradict or modify the written word" (quotation marks and citation omitted)).

The license agreement contained in Section 3 of the MSSA provides that, "unless the parties agree on written license terms, [Drut] grants Microsoft and its Affiliates a … right and

ORDER - 6

license" to Drut's technology. MSSA at 7-8 § 3(c)(2)). The Court does not find that this language is ambiguous. By Section 3's clear terms, and in the absence of a separate written license agreement, Drut unambiguously conveyed a license to Microsoft. Further, the extrinsic evidence Drut asks this Court to consider – allegations that the parties understood that the MSSA would not convey a license to Microsoft – flatly contradicts the MSSA's clear language providing that it does. As such, this Court will not consider it in determining whether a license agreement exists.

Finally, Drut argues that, contrary to the MSSA stating that the license was "fully paid-up" (*see* MSSA at 7-8 § 3(c)(2)), Microsoft never actually paid a separate license fee, thereby rendering any promise for a license illusory for lack of consideration. Opp. at 3-4. It is, however, "[a] basic principle of contract law [] that consideration sufficient to support one promise is sufficient to support any number of promises, and each written term of a contract need not be bargained for." *Smith v. W. Coast Marine Cleaning, Inc*., 98 Wash. App. 1057 (Wn. Ct. App. 2000) (quoting *Millican of Washington, Inc. v. Wienker Carpet Serv*., Inc., 44 Wash. App. 409, 413 (Wn. Ct. App. 1986)). Consistent with this principle, Microsoft's payment obligations under the MSSA – amounting to $1,500,000 in total – constitutes consideration sufficient to support Drut's promise to grant Microsoft the license.

Accordingly, Section 3 of the MSSA sets forth a valid license agreement between Drut and Microsoft.

### 2. Whether the License Was Invalidated by Microsoft's Alleged Breach of the MSSA

Drut contends that even if the parties entered into a license agreement, that agreement was invalidated when Microsoft breached the MSSA by failing to pay Drut for Milestones 3 through 5. The Court agrees with Microsoft that the license was not invalidated as Drut contends.

ORDER - 7

Drut conveyed to Microsoft a "worldwide, nonexclusive, perpetual, irrevocable, royalty-free, fully paid-up right and license" to Drut's technology. MSSA at 7-8 § 3(c)(2). In *Nano-Proprietary, Inc. v. Canon, Inc.*, 537 F.3d 394 (5th Cir. 2008), the Fifth Circuit examined nearly identical language in a license agreement granting the defendants an "irrevocable" license to the plaintiff's patents. The court rejected the plaintiff's argument that the defendant's material breach of that agreement resulted in the license's termination, finding instead that, "[b]ased upon the unambiguous meaning of 'irrevocable,' … the [license agreement] could not be terminated, notwithstanding a material breach of the agreement." *Id.* at 400. Otherwise, that term "would be rendered superfluous, in contravention of established rules of contract interpretation." *Id.*

This Court finds the reasoning in *Nano-Proprietary* persuasive and consistent with many other courts, including one in this district applying Washington law. *See Timeline, Inc. v. Proclarity Corp.*, No. 05-cv-1013, 2007 WL 1574069, *4 (W.D. Wash. May 29, 2007) (finding, under Washington law, that the "irrevocable" license could "not be revoked under any circumstances, even if there is a material breach of the agreement"); *State St. Glob. Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d 322, 356 (S.D.N.Y. 2020) ("Defendant has plausibly alleged a claim for breach of the Agreements, but this cannot serve as a basis for rescission because the license is irrevocable."); *Bennett v. Am. Online, Inc.*, No. 06-cv-13221, 2007 WL 2875169, at *14 (E.D. Mich. Sept. 28, 2007) (material breach of terms of service agreement did not result in termination of "irrevocable, perpetual right to 'use' the software"); *Matter of Provider Meds, L.L.C.*, 907 F.3d 845, 856 (5th Cir. 2018) ("the use of 'irrevocable' … indicates that the license may not be revoked for any reason, even a breach by the other side"). As such, the Court comes to the same conclusion here. Drut's argument that Microsoft's breach of the MSSA invalidated the license "would give no effect to the term 'irrevocable.'" *See State St. Glob. Advisors*, 431 F. Supp. 3d at 357. By

ORDER - 8

expressly describing the license as "irrevocable," the parties contemplated that the license could not be revoked under any circumstances.

It is true that the contract breaches at issue in *Nano-Proprietary* – and in nearly all of Microsoft's cited authority on this point – did not deal, as is the situation here, with a party's failure to make payments due under the contract. This distinction, however, does not change the result. The MSSA does not contain any language indicating that full payment was a condition precedent to Drut's granting of an irrevocable license. *See Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 559 n.7 (9th Cir. 1990) (contract language did not "support a conclusion that full payment was a condition precedent to" defendant's use of licensed work); *see also Northwood Est., LLC v. Lennar Nw., Inc.*, 12 Wash. App. 2d 1038 (Wn. Ct. App. 2020) ("[W]ords such as 'provided that,' 'on condition,' 'when,' 'so that,' 'while,' 'as soon as,' and 'after' suggest a conditional intent, not a promise." (citation omitted)). Absent such terms, Microsoft's failure to pay all amounts due under the MSSA, while certainly giving rise to a contractual claim for damages, does not effect a rescission of the license. *See Powlus v. Chelsey Direct, LLC*, No. 09-cv-10461, 2011 WL 135822, at *6 (S.D.N.Y. Jan. 10, 2011) (contract's grant of "irrevocable" license was "inconsistent with an intended right to rescind for non-payment"); *cf. Fraunhofer-Gesellschaft zur Forderung der Angewandten Forschung E.V. v. Sirius XM Radio Inc.*, 940 F.3d 1372, 1381 (Fed. Cir. 2019) (finding contract ambiguous on whether irrevocable license survived its termination where it stated that termination would not affect license rights provided that licensee paid all amounts due).

This construction is moreover consistent with the nature of a technology license and the parties' alleged business dealings. "Often a license is of such critical value to an enterprise or an undertaking that the prospective licensee may seek to make the license irrevocable despite nonpayment or other material breach." Roger M. Milgrim, *Milgrim on Licensing* § 27.02 (2022)

ORDER - 9

(noting that the simplest way of achieving irrevocability is "to simply provide that: The license conferred under this Agreement shall be perpetual and irrevocable."). Microsoft's incorporation of Drut's technology into its servers, in reliance upon the license agreement, would be at odds with a license that could be invalidated, rendering Microsoft's servers unusable.

Finally, the Court does not find persuasive Drut's argument that an irrevocable license is inconsistent with Section 5(c)(1) of the MSSA, which provides that "[e]ither party may immediately terminate this Agreement on written notice of a breach of" Section 6's confidentiality provisions. Opp. at 3 (citing MSSA at 10 §§ 5(c)(1), 6(a)). According to Drut, its termination right would be meaningless if Microsoft had a temporally unlimited license to its technology. *Id*. The MSSA, however, contains a Survival clause providing that "[t]he provisions of this Agreement which … have application to events that may occur after the termination or expiration of this Agreement [] will survive such termination or expiration." MSSA at 10 § 5(e). The parties' use of the term "irrevocable" in describing the granted license demonstrates that it was, consistent with the Survival clause, intended to survive the MSSA's termination. While other provisions could certainly be terminated, the license could not.

In sum, the MSSA expressly granted Microsoft an irrevocable license that remains valid notwithstanding Microsoft's alleged breach of that agreement. Drut is therefore not entitled to a declaration that Microsoft's failure to pay for Milestones 3 through 5 negates its right to that license.

**C.     Drut's Claim for Trade Secret Misappropriation**

Drut asserts claims for trade secret misappropriation under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836, and the Uniform Trade Secrets Act, as codified in Washington law at RCW § 19.108.030 *et seq*. Compl. ¶¶ 148-195. Drut premises its claims on its allegations that

ORDER - 10

Microsoft used Drut's proprietary hardware and software configurations, without authorization, to further develop the Azure server network. *Id.* Microsoft counters that these claims fail "because Microsoft held a license to the information Drut now claims as a trade secret." Mot. at 10-11.

Assuming that the Complaint adequately alleges that the technology at issue was protectable trade secret – which Microsoft does not dispute (*see* Rep. at 9) – Drut still does not plead that Microsoft unlawfully misappropriated it. Trade secret misappropriation can be committed through (1) the "[a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means," or (2) under certain circumstances, by the "[d]isclosure or use of a trade secret of another without express or implied consent…." 18 U.S.C. § 1839(5); RCW § 19.108.010. The Complaint pleads neither type.

Drut's claim that Microsoft committed trade secret misappropriation through the first type – *i.e.*, acquiring it "by improper means" – is based on its allegation that that Microsoft "insisted that Drut must provide its source code in order to receive a milestone payment that was already due and payable." Opp. 12. In other words, Drut claims that Microsoft's acquisition of its technology was improper because it was accomplished by coercing Drut to execute and then comply with the Change Order. "Improper means," however, is defined under both the federal and state statutes to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(6)(a); RCW § 19.108.010(1). Drut does not allege that Microsoft's acquisition was accomplished through any of these means.[5] Moreover, Drut does not point to any authority

---

[5] While Drut alleges that Microsoft "affirmatively misrepresent[ed] that Microsoft was not using Drut's trade secrets and intellectual property," that misrepresentation could not have enabled Microsoft's acquisition of Drut's technology because it was made on July 17, 2020, after the alleged acquisition. Compl. ¶¶ 118-19. Further, while Drut alleges that Microsoft breached the MSSA's confidentiality provisions, that breach relates to Microsoft's alleged use and disclosure of Drut's trade secret, and not its acquisition. *See infra* at 13.

ORDER - 11

supporting a misappropriation claim, like the one it asserts here, based on a party's knowing and deliberate provision of its technology to a business partner pursuant to its contractual obligations. *Cf. Glacier Water Co., LLC v. Earl*, No. 08-cv-1705, 2010 WL 5071258, at *4 (W.D. Wash. Dec. 7, 2010) (rejecting claim because plaintiffs "voluntarily disclosed" the trade secret to business partner); *MEECO Mfg. Co. v. Imperial Mfg. Grp.*, No. 03-cv-3061, 2005 WL 8172680, at *4 (W.D. Wash. May 26, 2005) (same).

Drut's second claim – that Microsoft disclosed and used its trade secret "without express or implied consent" – is based on Drut's allegations that Microsoft used Drut's technology to develop its Azure server, and then disclosed it on YouTube. *See* Opp. at 13. As discussed above, however, the MSSA granted Microsoft a license to, among other things, "use," "create derivative works of," and "publicly perform or display" any materials "incorporated into Deliverables or [] necessary for the use or distribution of Deliverables." MSSA at 7-8 § 3(c)(2). Drut, notably, does not dispute that its technology constituted such materials. *See* Rep. at n.5. Therefore, Microsoft's alleged use and disclosure of Drut's technology was expressly authorized by the MSSA, and was thereby done with Drut's consent.

Accordingly, Drut's claim for trade secret misappropriation fail.

### D. Drut's Claims for Conversion and Unjust Enrichment

Drut asserts a conversion claim (Compl. ¶¶ 244-49) and an unjust enrichment claim (*id.* ¶¶ 235-43) that are premised on the same allegations and theory as its trade secret misappropriation claim. A separate part of Drut's unjust enrichment claim is premised on Microsoft's alleged refusal to pay Drut for the additional project work it performed (*see* Compl. ¶¶ 235-43), but Microsoft does not seek to dismiss that aspect of the claim. *See* Mot. at 10-11.

ORDER - 12

Drut does not separately address its conversion claim, and its unjust enrichment claim premised on Microsoft's alleged misuse of Drut's technology, in opposing the Motion. Instead, Drut relies on its trade secret misappropriation arguments to support those claims. *See* Opp. at 6, 10. Given that Microsoft held an irrevocable license to Drut's technology, the claims are not viable.

### E.   Drut's Breach of Contract Claim

Microsoft moves to dismiss Drut's claim that it breached two provisions of the MSSA: (1) Section 3(a) of the MSSA (*id.* ¶ 202(i)); and (2) the confidentiality provisions contained in Section 6(a) of the MSSA (Compl. ¶¶ 206-14). Microsoft contends, correctly, that these claims fail because they "assume[] that Microsoft misappropriated Drut's trade secrets." Mot. at 11-12.

Drut asserts that Microsoft breached Section 3 by "[m]isusing Drut's trade secrets … despite the clear text of the MSSA in Section 3(a) that Drut continued to own its pre-existing IP and that any license to Microsoft would be the subject of a future agreement." Compl. ¶ 202(i). As discussed above, however, the license agreement contained in that same section remains the operative agreement (*see supra* at § III(B)), and it authorized Microsoft to use and create derivative works of the technology Drut incorporated into its deliverables (*see supra* at 11). The Complaint therefore does not establish a breach of Section 3.

Similarly, Drut claims that Microsoft breached Section 6(a) – which prohibits the parties from "us[ing] or disclos[ing] to any third-party any Confidential Information" (MSSA at 10 § 6(a)(2); *see* NDA at 2 § 3(a)) – by using Drut's technology to develop its Azure server. Compl. ¶¶ 206-14. Section 6(a), however, is subject to the NDA (*see* MSSA at 10 § 6(a)(1)), and the NDA expressly permits the use of information that was known by Microsoft "without an obligation to keep it confidential." NDA at 1 § 2(b). As discussed above, under the MSSA, Microsoft was

ORDER - 13

authorized to use and display the technology it received from Drut. *See supra* at 12. Microsoft's alleged use of Drut's technology therefore falls outside the scope of, and was permitted by, the NDA. Accordingly, the Complaint does not establish a breach of Section 6(a).

### F. Drut's Claim that Microsoft Breached the Implied Covenant of Good Faith and Fair Dealing

Drut claims that Microsoft breached the implied covenant of good faith and fair dealing in numerous respects. Compl. ¶¶ 215-224. As Drut points out (Opp. at 8-9), and as Microsoft's Reply does not dispute, the Motion does not specifically address the majority of Microsoft's alleged breaches. Specifically, the Motion does not address Drut's claim that Microsoft breached the covenant by: (1) frustrating Drut's work on the Project by refusing to cooperate in developing deliverable "specifications" (Compl. ¶ 218); (2) imposing material changes to the deliverables that rendered the milestone deadlines impossible to attain (*id*. ¶ 219); (3) withholding payments in order to gain access to Drut's technology (*id.* ¶ 220); and (4) requiring Drut to postpone the submission of invoices and then refusing to pay them because of their purported delay (*id.* ¶ 223). Drut's claim, therefore, survives in those respects.

The Motion does address, on the other hand, Drut's claim that Microsoft breached the covenant by (1) "engag[ing] in a pattern of subversion to … usurp[] Drut's intellectual property and trade secrets" (Compl. ¶ 217), and (2) "making lulling statements to Drut about a separate license" (*id*. ¶ 222). Those alleged acts, however, cannot serve as the basis for this claim.

"The implied duty of good faith and fair dealing protects a party's justified expectations in entering the agreement." *134th Street Lofts, LLC v. iCap Northwest Opportunity Fund, LLC*, 15 Wash. App. 2d 549, 566 (Wn. Ct. App. 2020). The duty, however, "cannot contradict express terms in a contract," nor can it be used to "interpret[] … contractual provisions in a manner that expands the scope of their plain meaning." *Id.* at 564-65. Drut's claim that Microsoft breached

ORDER - 14

the covenant through its unauthorized use of Drut's technology fails because it seeks to impose a duty on Microsoft – *i.e.*, to refrain from using the technology – that contradicts the MSSA's express authorization of such use. *See supra* at 12. Similarly, Drut's claim that Microsoft acted in bad faith by making statements about a separate license fails because it is premised on a purported duty – *i.e.*, to negotiate a separate license – that is not situated in the parties' agreements. *See supra* at § III(B)(1); *see also Johnson v. Yousoofian*, 84 Wn. App. 755, 762 (Wn. Ct. App. 1996) ("If there is no contractual duty, there is nothing that must be performed in good faith."). Accordingly, Drut's claim that Microsoft breached the implied covenant of good faith and fair dealing fails in these two respects.

### G. Drut's Claim for Violation of Washington's Consumer Protection Act

Drut claims that Microsoft violated Washington's Consumer Protection Act ("CPA"), RCW 19.86.010 *et seq.*, by "(1) including Drut's software in its cloud-based operating system," and "(2) failing to … respect[] the confidentiality of Drut's trade secret and confidential information." Compl. ¶ 226. To prevail on a CPA claim, "the plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." *Panag v. Farmers Ins. Co. of Washington*, 166 Wash. 2d 27, 37 (Wn. Sup. Ct. 2009). Microsoft contends that the Complaint fails to plead the first and third elements. Mot. at 14-15.

In order to establish "an unfair or deceptive act or practice," the plaintiff "need not show the act in question was intended to deceive, only that it had the capacity to deceive a substantial portion of the public." *Panag*, 166 Wash. 2d at 47. "[T]here must be shown a real and substantial potential for repetition, as opposed to a hypothetical possibility of an isolated unfair or deceptive act's being repeated." *McClellon v. Citigroup Glob. Markets, Inc.*, No. 18-cv-978, 2018 WL

ORDER - 15

5808440, at *4 (W.D. Wash. Nov. 6, 2018) (citation omitted).  While Drut's allegations concerning Microsoft's "pattern of … seeking to obtain intellectual property rights for nominal payments" are minimal (*see* Compl. ¶ 21), Drut is more specific in its Opposition about what it seeks to prove.  In particular, in its brief, Drut elaborates that Microsoft employs clever contract drafting, threats of nonpayment, and aggressive project demands in the course its supply engagements with smaller technology companies to gain access to their intellectual property for little consideration.  Opp. at 15; *see id*. at 12-13.  The Court finds that this alleged course of conduct – which the Complaint adequately alleges in relation to Drut – constitutes an unfair or deceptive practice, and is capable of being repeated towards similar situated companies.  *See, e.g.*, *State v. Kaiser*, 161 Wash. App. 705, 722 (Wn. Ct. App. 2011) (defendants' practices inducing property owners to enter agreements through misrepresentations, and burying information in agreements, violated the CPA); *Anderson v. Valley Quality Homes, Inc*., 84 Wash. App. 511, 523 (Wn. Ct. App. 1997) (finding CPA violation where defendant induced sales and then "used a contract clause to place on them the responsibility for any future problems").

The Court also finds that Drut has adequately pled the "public interest" element of a CPA claim.  A dispute between private parties "has a public interest impact where there is a 'likelihood that additional plaintiffs have been or will be injured in exactly the same fashion.'"  *Beacon Plumbing & Mech. Inc v. Sposari Inc*, No. 15-cv-1613, 2016 WL 5795282, at *4 (W.D. Wash. Mar. 17, 2016) (quoting *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co*., 105 Wash. 2d 778, 790 (Wn. Sup. Ct. 1986)).  While, as noted above, Drut's "pattern" allegations are minimal, Drut alleges conduct that can plausibly be shown to injure other small technology companies in the same fashion, and therefore implicates a public interest impact.  Drut "should have the opportunity to develop evidence to support this claim." *Birkholm v. Washington Mut. Bank, F.A.*,

ORDER - 16

447 F. Supp. 2d 1158, 1165-66 (W.D. Wash. 2006) (declining to dismiss CPA claim even though plaintiff's "argument that the conduct at issue in this case affects the public interest because the conduct is capable of repetition is weak at best").

Accordingly, Drut has adequately pled the first and third elements of a CPA claim. The Court therefore declines to dismiss Drut's claim.

H.     **Drut's Claim for Extra-Contractual Damages**

Microsoft seeks to "dismiss Drut's request for an '[a]ward … [of] compensatory, consequential, exemplary, punitive, and multiple damages on all claims' as barred by the MSSA." Mot. at 15 (quoting Compl. at 45). Microsoft contends that such damages are precluded by Section 9 of the MSSA, which provides that "neither party will be liable to the other for any consequential special, exemplary, or punitive damages … arising out of this agreement," unless the party breached, among other obligations, its "confidentiality … obligations under this agreement." MSSA at 15 § 9(a)-(b) (capitalization removed). Drut does not respond to this argument in its Opposition.

In light of Drut's lack of response to Microsoft's argument, and given this Court's finding that Drut has not pled that Microsoft breached its confidentiality obligations, the Court dismisses Drut's claim for consequential, exemplary, punitive, and multiple damages on its claims. Nevertheless, the Court does not dismiss Drut's claim for compensatory damages for any claims on which Drut ultimately prevails. *See Inteum Co., LLC v. Nat;l Univ. of Singapore*, 371 F. Supp. 3d 864, 876 (W.D. Wash. 2019) (noting that "[e]xpectation damages are generally awarded for breach of contract"); *Virginia Mason Med. Ctr. v. Exec. Risk Indem. Inc.*, 331 F. App'x 473, 474 (9th Cir. 2009) (noting that the CPA "provides compensatory damages for harm"). The MSSA does not limit Drut's entitlement to compensatory damages, *see* MSSA at 15 § 9(a)-(b), and while

ORDER - 17

Drut did not raise this argument in its Opposition, the Court finds that it would be unnecessarily draconian to deem Drut to have waived it.

## IV.     CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Microsoft's motion to dismiss the Complaint (Dkt. 16).  The Court dismisses, with prejudice, Drut's claims for trade secret misappropriation and conversion in their entirety, and Drut's claims for declaratory relief, breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and extra-contractual damages only to the extent identified in this Order.  The Court declines to dismiss Drut's claim under Washington's Consumer Protection Act.

SO ORDERED.

Dated:  June 15, 2022

*Barbara J. Rothstein*

Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER - 18